**WISCONSIN CENT. RY. CO.**
v.
**ZELLE et al.**

**PREFERRED STOCKHOLDERS COMMITTEE**
v.
**ZELLE et al.**

Nos. 14911, 14912.

United States Court of Appeals,
Eighth Circuit.

Feb. 3, 1954.

Abraham K. Weber, New York City, for appellant Wisconsin Cent. Ry. Co., debtor.

George Morris Fay, Washington, D. C. (Fay & Anderson, Washington, D. C., on brief), for appellant Preferred Stockholders Committee of Wisconsin Cent. Ry. Co.

Donald West, Minneapolis, Minn. (James E. Dorsey, Minneapolis, Minn., on the brief), for appellee Edgar F. Zelle, as Trustee of Wisconsin Cent. Ry. Co., Debtor.

Henry S. Mitchell, Minneapolis, Minn. (Leonard H. Murray, Minneapolis, Minn., on the brief), for appellee Canadian Pac. Ry. Co.

Paul D. Miller, New York City (A. Albert Minton, New York City, and Bergmann Richards, Minneapolis, Minn., on the brief), for appellee Superior and Duluth Protective Committee.

Frank H. Detweiler, New York City, and Frank Janes, Minneapolis, Minn., on the brief, for appellee Superior and Duluth Mortgage Trustee.

Irving J. Galpeer and Josiah E. Brill, New York City, on the brief, for appellee First and Refunding Mortgage Committee.

William G. Murphy, New York City, and Thomas P. Helmey, Minneapolis, Minn., on the brief, for appellee First and Refunding Mortgage Trustee.

Reese D. Alsop, New York City, on the brief, for appellee Gaston Group of First General Mortgage Bondholders.

William A. W. Stewart, New York City, and Samuel H. Morgan, St. Paul, Minn., on the brief, for appellee First General Mortgage Trustee.

W. J. Quinn and E. E. Boyner, Minneapolis, Minn., on the brief, for appellee Minneapolis, St. P. & S. St. M. R. Co.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

COLLET, Circuit Judge.

The Interstate Commerce Commission approved a plan of reorganization for the Wisconsin Central Railway Company under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205. The plan was accepted by all creditor groups. It was objected to by the debtor corporation and the Preferred Stockholders Committee of the debtor, who are the present appellants. The plan eliminates the interest of preferred and common stockholders. The objectors challenged the propriety of the plan, and the sufficiency of the evidence upon which certain findings of the Commission were based, in the District Court. That court found

those objections to be without merit in a memorandum opinion reported as In re Wisconsin Central Railway Co., 112 F.Supp. 916. This appeal followed.

The debtor leased its properties to the Minneapolis, St. Paul and Sault Ste. Marie Railway (now Railroad) Company for 99 years in 1909. The debtor was placed in equity receivership in December, 1932. It filed its petition for reorganization in September, 1944. Edgar F. Zelle, one of the appellees and the present sole trustee, was one of the two trustees appointed in 1944. The present plan of reorganization was approved by the Commission in its Report of June 3, 1947, its Supplemental Report of March 17, 1952, and its Second Supplemental Report and its Second Supplemental Order, both of September 15, 1952. The nature of the errors assigned on this appeal makes unnecessary a review of the entire proceedings.

The two appellants file a joint brief. They contend, first, that there was no "material evidence in the record to support the conclusion of the Commission as to valuation (capitalization)" and that the legal standards set forth by 77 sub. e of the Bankruptcy Act, 11 U.S.C.A. § 205, sub. e,[1] were not satisfied by the Commission in reaching that valuation.

■■ It is appellants' position that the Commission based its valuation and capitalization upon the testimony of the witness McKenna as to prospective revenues, who they contend did not possess the proper testimonial qualifications as a forecaster to testify as an expert on that subject. The trial court reached the conclusion that the admission of McKenna's testimony could not have had any prejudicial effect upon the Commission's conclusions, because it was the province of the Commission to weigh his testimony for what it was worth, because the Commission rejected certain of Mc-

Kenna's conclusions (unfavorable to appellants' theory of proper valuation), and because there was other competent evidence of the debtor's earning power before the Commission. If the legal qualification of McKenna to testify as an expert was established, the correctness of the trial court's above-stated conclusion is not open to question. It does not appear that the court specifically held that McKenna's testimony was admissible. We are in effect asked to reverse the trial court on the ground that the record shows that testimony was inadmissible. The admission of the testimony of an expert witness over the objection that he does not possess the necessary legal qualification to testify as an expert was to a large extent within the discretion of the Commission. That is true for the reason (possibly there are others) that there cannot be any one hard and fast, rigid rule of measurement promulgated by which the learning and familiarity of a witness with the subject matter, necessary to establish his competency as an expert, can be precisely measured in all cases. From the briefs we learn that Mr. McKenna's testimony was rather extended. Only a portion of it is reported in this record. All of that evidence was available to the trial court. Since the admissibility of McKenna's testimony was within the reasonable discretion of the Commission, and its reception would be error only in the event of an abuse of that discretion, we are not justified in so holding, in the absence of a reasonably clear demonstration of such abuse, which is not now made apparent. Chicago, Great Western Ry. Co. v. Beecher, 8 Cir., 150 F.2d 394; Minnesota & Ontario Paper Co. v. Swenson Evaporator Co., 8 Cir., 281 F. 622.

Appellants say that the plan did not meet the following requirements of Sec-

1. " * * * The value of any property used in railroad operation shall be determined on a basis which will give due consideration to the earning power of the property, past, present, and prospective, and all other relevant facts. In determining such value only such effect shall be given to the present cost of reproduction new and less depreciation and original cost of the property, and the actual investment therein, as may be required under the law of the land, in light of its earning power and all other relevant facts."

tion 77, sub. e, of the Bankruptcy Act, 11 U.S.C.A. § 205, sub. e:

" * * * the judge shall approve the plan if satisfied that: (1) It complies with the provisions of subsection (b) of this section, is fair and equitable, affords due recognition to the rights of each class of creditors and stockholders, does not discriminate unfairly in favor of any class of creditors or stockholders, and will conform to the requirements of the law of the land regarding the participation of the various classes of creditors and stockholders; * * *."

The specific alleged infirmities under this section will be considered in the order they appear in the brief.

█ It is asserted that paragraph b (3) of Section 77 [2] is violated because there was no provision for warrants or options to stockholders to preserve their interests. This question is necessarily embraced within the broader assignments that the plan is not fair and equitable, and the capitalization of $58,-947,900 was too low. For unless all of the reasonable value of the debtor's property has not been exhausted by proper provision for senior securities, there is no legal necessity or occasion for the issuance of warrants by the reorganized company for the interest of old stockholders in their stock. Ecker v. Western Pacific R. Corp., 318 U.S. 448, 63 S.Ct. 692, 87 L.Ed. 892.

Appellants contend that the plan is not fair and equitable to the old stockholders. The Commission found that it was. Appellees say that we should consider this assignment as waived because the evidence upon which the Commission based its finding is not before us. But we are of the opinion that appellees misconceive the meaning and intent of appellants' position. We are not being asked to say that the Commis-

sion's finding is not supported by evidence which is not before us. We are requested to hold that the plan is not fair and equitable to the old stockholders because the capitalization rate of 4.19%, resulting from the assumed future earnings of the debtor, was unreasonably low because the future earnings were underestimated and future tax rates overestimated, and because insufficient consideration was given to expectant growth in the national economy and the continued high rate of expenditure for national defense purposes. Appellants argue that more favorable consideration should have been given the stockholders on one or more of the foregoing questions and that if that had been done, since the capitalization so nearly equals the outstanding debts of $59,231,941, the stockholders' interest would not have been eliminated.

██ Appellants concede that "it is true that there is no predetermined capitalization rate or multiplier of earnings, and that numerous factors bear upon the final result." They predicate unfairness upon a comparison of the capitalization rate fixed for the debtor with capitalization rates resulting from assumed revenues applied to valuations in other cases, such as 3% in the Milwaukee & Pacific Reorganization, 239 ICC 485, of 3.1% in the Rock Island Reorganization, 242 ICC 298, or 3.3% in the Chicago & North Western Reorganization, 236 ICC 575. In passing upon this question in the trial court that court directed attention to rates of capitalization in other railroad reorganization proceedings in that court wherein such rates had been 4.5% and 4% and stated that "all factors and circumstances, and particularly those pertinent to this debtor in its relatively limited railroad operations, must be considered." Many and varied factors enter into the determination of an overall

2. "(b) A plan of reorganization within the meaning of this section * * * (3) may include, for the purpose of preserving such interests of creditors and stockholders as are not otherwise provided for, provisions for the issuance to any such creditor or stockholder of options or warrants to receive, or to subscribe for, securities of the reorganized company in such amounts and upon such terms and conditions as may be set forth in the plan; * * *." 11 U.S.C.A. § 205, sub. b(3).

valuation. While the rate of capitalization is one, and may be used as a check of the soundness of the result reached from the application of other criteria, the mere fact that the rate is different in one case from that in others will not demonstrate unfairness.

It is asserted that the assumed future earnings were unreasonably low. Using a statement of the Commission, made in its Second Supplemental Report, that the plan contemplates average future earnings considerably in excess of those of the hypothetical normal year estimate as a basis therefor, it is argued that the report is inconsistent with the result reached and demonstrates a fallacious assumption of future revenues. But when the statement is read with the context there is no such inference.[3]

■ The future trend of tax rates is a subject which we are no better qualified to pass upon than the Commission. But more important, it is a subject, like other factors which enter into the ultimate finding of value, Congress has left to the considered judgment of the Commission. State of Texas v. Group of Institutional Investors, 8 Cir., 191 F. 2d 265. Our authority on review extends only to the correction of the use of erroneous legal standards.

That we may not assume that the Commission's assumed future earnings are arbitrarily unfair to the stockholders is demonstrated by the fact that only in one of the past four years has the debtor's earnings before fixed charges and federal income tax accruals equaled the Commission's forecast. 112 F.Supp. 916, 922.

The forecast of our national economy and the future rate of expenditure for national defense is, like the forecast relative to other factors heretofore discussed, for the considered judgment of the Commission. We find no warrant in the record for disturbing it.

■ Appellants object to the allocation of 23,850 shares of new common stock to the Minneapolis, St. Paul and Sault Ste. Marie Railroad Company for its secured claim of $1,142,260 and its unsecured claim of $750,000. These claims were the result of a compromise, approved by the District Court, of claims of that Railroad for approximately $8,000,000. The objection is that the claims of that Railroad, referred to as the Soo Line, should be subordinated to the claims of appellant Preferred Stockholders. Only in the event of a remote possibility, and also in the event the Soo Line claims be completely disallowed or subordinated, would the old preferred stockholders be entitled to any interest whatever in the reorganized company. The plan and the order of the trial court provide that in the event the possibility should materialize by the time of consummation of the plan, the 23,850 shares of new common stock allocated to the Soo Line are to be placed in escrow and the appellants given an opportunity to

3. "The debtor contends that its earnings after taxes should be estimated to be at least $3,000,000 annually for reorganization purposes, and that a capitalization rate of 3¾ percent should be applied thereto. It is apparent from our prior report that we gave consideration to the possibility that earnings in the future would equal or exceed that amount. Unless the average annual earnings do exceed substantially the 'normal year' estimate of $2,469,654, it seems clear that the claims of creditors to which stock is allocated under the plan will not be satisfied. As pointed out in our prior report, under the approved capitalization in a normal year after deductions for the sinking funds and applying a Federal income tax rate of 45 percent, the earnings per share of stock would amount to only $3.15. Obviously, such earnings per share are insufficient to make the stock intrinsically worth the amounts of the creditors' claims to which the stock is allocated, particularly when it is considered that normally a substantial portion of the earnings will not be paid out in dividends and that a substantial portion may have to be devoted to improvements to the debtor's property. Thus it is clear that the plan approved by us contemplates average future earnings considerably in excess of those of our normal year estimate."

litigate the question of subordination. The possibility that appellants will have any financial interest to litigate is so slight, and the opportunity to litigate such interest if it materializes is so complete, that appellants have no present ground to object to the plan on the ground that the question of subordination is left open.

■ The Canadian Pacific Railway Company holds claims (other than stock) against the debtor for an amount somewhat in excess of $20,000,000. It owns a controlling interest in the Soo Line. Soo in turn has been operating the debtor's properties under lease and subsequently during the latter's reorganization proceedings under direction of the court appointed trustee for many years. The plan or reorganization provides for the issuance of new bonds and stock for those claims. A large part of the Canadian Pacific's holdings represented by its claims were acquired subsequent to the filing of debtor's petition for reorganization. Appellants sought to have an order made by the Commission to require the Canadian Pacific to disclose the cost to it of these acquisitions on the ground that Canadian Pacific occupied a fiduciary relationship to the debtor and therefore should not be allowed to profit from trading in debtor's securities. The Commission denied the order sought. The trial court found no justification for requiring the disclosure or applying the fiduciary rule. See 112 F.Supp. 916. The facts stated by the trial court are not challenged here. Upon those facts the action of the trial court was proper.

■ We find no merit in appellants' contention that the debtor was improperly denied a hearing by the Commission on its plan of reorganization or that the reservation by the trial court of the issue of whether the claims of the Soo Line should be subrogated to claims of certain bondholders was a bar to confirmation of the plan.

The judgment of the trial court is affirmed.