## SEABOARD AIR LINE RAILROAD CO. *v.* DANIEL, ATTORNEY GENERAL, ET AL.

No. 390.   Argued January 8, 1948.—Decided February 16, 1948.

*W. R. C. Cocke* argued the cause for appellant. With him on the brief were *J. B. S. Lyles, Harold J. Gallagher, Leonard D. Adkins* and *James B. McDonough, Jr.*

*Irvine F. Belser,* Assistant Attorney General of South Carolina, argued the cause for appellees. With him on the brief were *John M. Daniel,* Attorney General, and *T. C. Callison,* Assistant Attorney General.

MR. JUSTICE BLACK delivered the opinion of the Court.

The constitution and statutes of South Carolina provide that railroad lines within that State can be owned and operated only by state-created corporations; a railroad corporation chartered only under the laws of another state is forbidden under heavy penalties to exercise such

powers within South Carolina.[1] There is a way, however, in which a foreign railroad corporation may, under South Carolina statutes, indirectly exercise some powers over its South Carolina operations. It may organize a South Carolina subsidiary. In addition, it may, under South Carolina law, consolidate that corporation with itself. In that event, so far as South Carolina statutes can govern, the consolidated result would be a corporation both of South Carolina and of another state.[2]

In 1946 the appellant, Seaboard Air Line Railroad Company, with the approval of the Interstate Commerce Commission, succeeded to the ownership and operation of a unitary railroad system with 4,200 railway miles in six southern states. Seven hundred and thirty-six miles of its lines traverse South Carolina connecting with its lines in adjoining states. Appellant is a Virginia created corporation, has no South Carolina subsidiary, and has effected no consolidation with a South Carolina created corporation. It is therefore subject to the penalties provided by South Carolina law if that law can validly be applied to it.

This action was brought by appellant in the South Carolina Supreme Court to enjoin the state attorney general from attempting to collect the statutory penalties from appellant or to enforce the statutory provisions against it.[3] The complaint alleged the following facts,

[1] S. C. Const. Art. 9, § 8; S. C. Code Ann. § 7784 (1942). Violations are punishable by fines of $500 for each county in which the railroad operates. Apparently each day's operation of the railroad constitutes a separate offense. The appellant in this suit operates in 30 South Carolina counties.

[2] S. C. Const. Art. 9, § 8; S. C. Code Ann. §§ 7777, 7778, 7779, 7785, 7789 (1942). See *Geraty* v. *Atlantic Coast Line R. Co.*, 80 S. C. 355, 361, 60 S. E. 936, 937.

[3] The appellant also prayed for a mandamus to compel the Secretary of State to accept and file papers and documents tendered by

about which there is no substantial dispute. Appellant applied to the Interstate Commerce Commission for approval of its purchase of the railway system pursuant to § 5 of the Interstate Commerce Act, as amended, 49 U. S. C. § 5. After notice to the Governor of South Carolina and others, the Commission conducted hearings and made a report in which it found that compliance by appellant with the South Carolina railroad corporation laws would result in "substantial delay and needless expense." It further found that compliance "would not be consistent with the public interest"—the criterion which § 5 required the Commission to use in passing upon a change in ownership or control of a railroad. The Commission then entered an order which authorized appellant, as a Virginia corporation, to own and operate the entire system including the South Carolina mileage. The complaint also asserted that the order, by explicit reference to the Commission finding in its report, affirmatively authorized appellant to own and operate the entire railway system without complying with the South Carolina railroad corporation laws.[4]

The answer to the complaint did not challenge the constitutional power of Congress to relieve appellant of compliance with South Carolina's requirements of state incorporation. It took the position that insofar as the Commission order could be interpreted as an attempt to override state laws in this respect it was void because outside the scope of the Commission's statutory authority.

appellant seeking authority to do business in the state as a foreign corporation under other South Carolina statutes. That phase of the case is not pressed here.

[4] The complaint also alleged, and it is argued here, that the state constitutional and statutory provisions imposed burdens on this interstate railroad in violation of the Commerce Clause of the Constitution of the United States. The view we take makes it unnecessary for us to pass on this contention.

The appellant then filed a demurrer on the ground that the answer as a matter of law constituted neither a defense nor a counterclaim since it admitted all allegations of fact in the complaint, and advanced nothing more than erroneous legal conclusions as asserted reasons why appellant should not be granted the relief for which it prayed.

No evidence was taken and the State Supreme Court decided the case on the pleadings. That court construed the Commission's order as relieving appellant from compliance with the statutory and constitutional provisions in issue, but it agreed with the respondents that the Commission lacked power under § 5 to enter such an order. Accordingly the State Supreme Court revoked the temporary restraining order it had previously issued, denied the requested injunction, and dismissed the complaint. 211 S. C. 122, 43 S. E. 2d 839. The case is properly here on appeal under § 237 (a) of the Judicial Code, as amended, 28 U. S. C. § 344 (a).

*First.* The complaint largely relied on an order of the Interstate Commerce Commission as a basis for the relief sought. The answer questioned the validity and scope of that order but did not seek a decree to set it aside or suspend it. Federal district courts have exclusive jurisdiction of suits to enjoin, set aside, annul or suspend an order of the Commission. In such suits the United States is an indispensable party. 28 U. S. C. § 46. Although the jurisdiction of the South Carolina Supreme Court was there conceded, and is not here challenged, we think it appropriate to pass upon it.

So far as the appellant's complaint is concerned, this is not the kind of action to "set aside" a Commission order of which the federal district courts have exclusive jurisdiction. While the action does involve the scope and validity of a Commission order, the relief requested in the complaint was the removal of an obstruction to the railroad's obedience to the order, not its suspension

or annulment. Nor did the answer seek to have the enforcement of the order enjoined, although it did question its validity as a basis for the relief sought in the complaint.

The appellant was in this dilemma. Federal law required it to obey the order so long as it remained in effect; for a failure to abide by its terms serious federal penalties could be imposed on it. 49 U. S. C. §§ 10 (1), 16 (7), (8), (9), (10). On the other hand, South Carolina statutes provided penalties for obedience to the order, which South Carolina officials asserted were enforceable against appellant despite the Commission's order. There was thus a bona fide controversy between appellant and the state officials over the validity of the order. Appellant wanted to obey the order; the state officials insisted appellant must obey their statutes instead. Federal district courts have not been granted special jurisdiction to review and confirm orders of the Commission at the suit of railroads wishing to obey such orders.

Under the foregoing circumstances appellant was not compelled to wait until someone who had standing to attack the Commission's order might decide to seek its annulment in a federal district court. It properly sought relief from a court which could obtain jurisdiction of the parties whose refusal to recognize the order gave rise to its predicament. And the state court then had power, because of the issues raised by the complaint and because of the relief requested, to determine whether the order, properly interpreted, did exempt appellant from compliance with the state railroad corporation laws and, if so, whether the Commission had transcended its statutory authority in making the order. *Illinois Cent. R. Co.* v. *Public Utilities Comm'n,* 245 U. S. 493, 502–505. See *Lambert Run Coal Co.* v. *Baltimore & O. R. Co.,* 258 U. S. 377, 381–382; *Central New England R. Co.* v. *Boston & A. R. Co.,* 279 U. S. 415, 420–421.

*Second.* It is here contended that the Commission's order did not manifest a clear purpose to authorize the exemption of appellant from obedience to the state's domestic corporation policy. We have no doubt that the Commission intended its order to have this effect. Its final order expressly stated that, subject to a condition not here relevant, it approved and authorized "the purchase . . . and the operation" by the appellant of the South Carolina and other railroad properties. Furthermore, the Commission discussed the South Carolina requirements in its report and therein made findings that compliance by appellant with them "would not be consistent with the public interest." These references were made to the South Carolina provisions, according to the Commission's report, in response to the appellant's suggestion that it would "avoid complications" if the Commission's report showed "on its face that our order is intended to override them."

*Third.* Respondents contend that the Commission lacked statutory authority to enter an order which would permit a Virginia corporation to operate these railroad lines in and through South Carolina contrary to that state's constitutional and legislative policy. They point to the broad powers states have always exercised in excluding foreign corporations and in admitting them within their borders upon conditions. They also emphasize the importance of this regulatory power to the states, and urge that, in the absence of express language requiring it, § 5 should be construed neither to restrict that state power nor to authorize the Commission to override state enactments. Recognizing the force of these arguments in general, we note the following circumstances which render them inapplicable in this case.

Congress has long made the maintenance and development of an economical and efficient railroad system a matter of primary national concern. Its legislation must be

read with this purpose in mind. In keeping with this purpose Congress has often recognized that the nation's railroads should have sound corporate and financial structures and has taken appropriate steps to this end. The purchase of this very railroad by appellant resulted from extensive reorganization proceedings conducted by the Interstate Commerce Commission and federal district courts in accordance with congressional enactments applicable to railroads. In furtherance of this congressional policy these agencies approved reorganization plans which called for the purchase and operation of these properties, including the portion in South Carolina, by appellant, as a Virginia corporation.

This Court has previously approved a Commission order entered in a § 5 consolidation proceeding which granted a railroad relief from state laws analogous to the state requirements here. *Texas* v. *United States,* 292 U. S. 522 (1934). Most of the reasons which justified the Commission's order in that case are equally applicable here. Furthermore, since that case was decided Congress has given additional proof of its purpose to grant adequate power to the Commission to override state laws which may interfere with efficient and economical railroad operation. By § 5 (11) of the Interstate Commerce Act, as amended by the Transportation Act of 1940, 54 Stat. 908, 49 U. S. C. § 5 (11), Congress granted the Commission "exclusive and plenary" authority in refusing or approving railroad consolidations, mergers, acquisitions, etc. The breadth of this grant of power can be understood only by reference to § 5 (2) (b) which authorizes the Commission to condition its approval upon "such terms and conditions and such modifications as it shall find to be just and reasonable." All of this power can be exercised in accordance with what the Commission may find to be "consistent with the public interest." The purchaser of railroad property with Commission approval is

authorized by § 5 (11) "to own and operate any proper-
ties . . . acquired through said transaction without in-
voking any approval under State authority," and such an
approved owner, according to that paragraph, is "relieved
from the operation of the antitrust laws and of all other
restraints, limitations, and prohibitions of law, Federal,
State, or municipal, insofar as may be necessary to enable
them to carry into effect the transaction so approved . . .
and to hold, maintain, and operate any properties . . .
acquired through such transaction."

This language very clearly reposes power in the Com-
mission to exempt railroads under a § 5 proceeding from
state laws which bar them from operating in the state
or impose conditions upon such operation. The state
court nevertheless thought that the last sentence of § 5
(11) negatived a congressional purpose to empower the
Commission to relieve railroads from state laws such as
South Carolina's. That sentence reads: "Nothing in this
section shall be construed to create or provide for the
creation, directly or indirectly, of a Federal corporation,
but any power granted by this section to any carrier or
other corporation shall be deemed to be in addition to and
in modification of its powers under its corporate charter
or under the laws of any State." We see nothing in this
sentence that detracts from the broad powers granted the
Commission by § 5. In fact, the language of the sentence
appears to support the Commission's power here exercised.
Although the sentence bars creation of a federal corpora-
tion, it clearly authorizes a railroad corporation to exer-
cise the powers therein granted over and above those
bestowed upon it by the state of its creation. These fed-
erally conferred powers can be exercised in the same man-
ner as though they had been granted to a federally created
corporation. See *California* v. *Central Pacific R. Co.*, 127
U. S. 1, 38, 40–45. Here, just as a federally created rail-
road corporation could for federal purposes operate in

South Carolina, so can this Virginia corporation exercise its federally granted power to operate in that State.

Other arguments of respondent have been considered and found to be without merit.  Appellant is entitled to the injunction it sought.

The judgment of the South Carolina Supreme Court denying the injunction and dismissing the complaint is reversed, and the cause is remanded to that court for proceedings not inconsistent with this opinion.

*Reversed and remanded.*