## NEW ENGLAND GREYHOUND LINES, Inc., et al. v. POWERS, Atty. Gen. of Rhode Island, et al.

### Civil Action No. 1291.

United States District Court
D. Rhode Island.

Dec. 4, 1952.

Edward Winsor, of Edwards & Angell, Providence, R. I., and Barrett Elkins, of Boston, Mass., for plaintiff.

Christopher Del Sesto, and Edward V. Healey, Jr., both of Providence, R. I., for intervenor.

Robert A. Coogan, Asst. Atty. Gen., of State of Rhode Island, for defendants.

LEAHY, District Judge.

This action is for a declaratory judgment pursuant to 28 U.S.C.A. § 2201, wherein the plaintiff and the intervenor seek a determination that the plaintiff, New England Greyhound Lines, Incorporated, a motor carrier, may hold and own Certificate of Public Convenience and Necessity No. 45, granted to it on May 8, 1951, by the Division of Public Utilities of the State of Rhode Island, notwithstanding the provisions of Article IX of the Amendments of the Constitution of Rhode Island, § 1,[1] and Chapter 125, § 3[2] of the General Laws of Rhode Island, 1938, relative to the registration and regulation of jitneys. The action arises under § 5(11) of the Interstate

---

1. "§ 1. Hereafter the general assembly may provide by general law for the creation and control of corporations: Provided, however, that no corporation shall be created with the power * * * to acquire franchises in the streets and highways of towns and cities, except by special act of the general assembly upon a petition for the same * * *."

2. "§ 3. No person, association or corporation shall operate a jitney until the owner thereof shall have obtained a certificate from the division of public utilities * * *. "* * * * No such certificate shall be issued to any person who is not a citizen resident within this state, nor to any association unless all members of such an association are citizens resident within this state, nor to any corporation unless such corporation has been created by a special act of the general assembly, upon petition for the same * * *."

Commerce Act, 49 U.S.C.A. § 5(11), by authority of which the Interstate Commerce Commission issued a Report and Order on February 13, 1951, which the plaintiff claims supersedes the Rhode Island Constitutional and Statutory provisions to which reference has been made.

The parties have by stipulation agreed on the facts in this case which are substantially as follows:

The plaintiff, New England Greyhound Lines, Incorporated, is a corporation organized under the laws of the State of Connecticut, and has its principal office in the City of Boston, Massachusetts. The intervenor, William J. Foster, is a resident of Westerly, Rhode Island. The defendant, the Honorable William E. Powers, is the duly elected and qualified Attorney General of the State of Rhode Island, and the defendant, the Honorable Thomas A. Kennelly, is the duly appointed and qualified Public Utilities Administrator of the State of Rhode Island.

The plaintiff, New England Greyhound Lines, Incorporated, under and by virtue of the Certificates of Public Convenience and Necessity granted to it by the Interstate Commerce Commission is a common carrier by motor vehicles of passengers, express, mail, and newspapers. One of the routes operated by the plaintiff is between Boston and New York City, via Providence and Westerly, in the State of Rhode Island.

The intervenor, William J. Foster, prior to May 8, 1951, was a common carrier by motor vehicle of passengers in interstate commerce between Providence and Westerly, pursuant to Certificate No. MC 59594 issued on April 25, 1942, by the Interstate Commerce Commission. He also held corresponding intrastate authority between Providence and Westerly, pursuant to Certificate No. 45 granted by the Division of Public Utilities of Rhode Island.

On October 17, 1950 the plaintiff purchased from the intervenor, for the sum of $40,000, all of the intervenor's right, title and interest in Certificate No. MC 59594 granted by the Interstate Commerce Commission and in Certificate No. 45 granted by the Division of Public Utilities of Rhode Island. Pursuant to § 5 of the Interstate Commerce Act, 49 U.S.C.A. § 5, a joint application was filed on November 16, 1950 with the Interstate Commerce Commission wherein the plaintiff and its parent company, The Greyhound Corporation, and the intervenor requested authority for the acquisition by the plaintiff of the operating rights, both interstate and intrastate, held by the intervenor. On February 13, 1951, the Interstate Commerce Commission, acting under the provisions of § 5 of the Interstate Commerce Act, issued its Report and Order approving the purchase by the plaintiff of the interstate and intrastate operating rights of the intervenor. On May 16, 1951, the plaintiff qualified as a foreign corporation doing business in Rhode Island.

Following approval of the transaction by the Interstate Commerce Commission on February 13, 1951, the plaintiff applied to the Division of Public Utilities of Rhode Island for approval of the transfer of Certificate No. 45 from the intervenor to the plaintiff. This application was disapproved on the ground that Article IX of the Amendments of the Constitution of Rhode Island, § 1, supra, and Chapter 125, § 3 of the General Laws of Rhode Island, 1938, supra, prohibit the holding of an intrastate certificate by a corporation which is not specially chartered by an Act of the Rhode Island General Assembly. The plaintiff thereupon caused to be filed in the 1951 session of the General Assembly an Act to create a specially chartered corporation to receive and hold said Certificate No. 45, but the Act failed of passage. Thereupon the plaintiff again requested the Division of Public Utilities to transfer to it said Certificate No. 45, urging that the provisions of the Constitution and Laws of Rhode Island, above referred to, were inapplicable, being in conflict with the Report and Order of the Interstate Commerce Commission issued pursuant to § 5 of the Interstate Commerce Act.

The defendant Thomas A. Kennelly, Public Utility Administrator, thereupon requested an opinion from the defendant, William E. Powers, Attorney General of Rhode Island, as to whether or not the Public Utility Administrator was author-

ized under these circumstances to approve the transfer of Certificate No. 45 to the plaintiff. On May 2, 1951, the Attorney General submitted an opinion in accordance with which the Public Utility Administrator issued an Order dated May 8, 1951, approving the transfer of said Certificate No. 45 from the intervenor to the plaintiff.

Neither the opinion of the Attorney General nor the Order of the Division of Public Utilities admits that the pertinent provisions of the constitution and statutes of Rhode Island are superseded by the Report and Order of the Interstate Commerce Commission. The Order of the Division of Public Utilities states that the transfer of Certificate No. 45 was sanctioned and approved by the Administrator—

"* * * in view of the emergency which would exist in the event of the immediate discontinuation of service between Providence, Westerly, and certain intermediate points in Rhode Island, and relying upon the legal advice contained in a letter dated May 3, 1951, from the Attorney General of Rhode Island. * * *"

The opinion of the Attorney General on this point was advisory only and not conclusively binding upon the parties, and as the transfer of Certificate · No. 45 to the plaintiff was approved by the Division of Public Utilities in view of an emergency which might otherwise arise, without indicating that the plaintiff would have the right to hold and own said Certificate without benefit of an emergency, the plaintiff and the intervenor agreed that final payment on account of the purchase price involved in the transaction should be postponed pending the removal of the alleged cloud on the plaintiff's title to said Certificate No. 45. The plaintiff then commenced this action for a declaratory judgment to remove said cloud, and thereafter William J. Foster was granted permission by the Court to intervene.

The issues in this action appear to require a determination as to whether or not, by virtue of § 5(11) of the Interstate Commerce Act and the commerce clause, Article 1, § 8 of the United States Constitution, the Interstate Commerce Commission had the power and authority to issue to this plaintiff the Report and Order of February 13, 1951, and whether such Order of the Interstate Commerce Commission is inconsistent with those provisions of the Rhode Island Constitution and statutes, above quoted, and whether if inconsistent, the Order, under the supremacy clause, Article VI of the United States Constitution, supersedes those provisions and renders the State laws inapplicable to the transaction here approved by the Interstate Commerce Commission.

The authority of the Commission is contained in §§ 5(2)(a) and 5(11) of the Interstate Commerce Act. Section 5(2)(a) of the Interstate Commerce Act makes it

"lawful, with the approval and authorization of the Commission * * * for any carrier * * * to purchase * * * the properties * * * of another * * *."

Section 5(11) provides as follows:

"The authority conferred by this section shall be exclusive and plenary, and any carrier or corporation participating in or resulting from any transaction approved by the Commission thereunder, shall have full power * * * to carry such transaction into effect and to own and operate any properties and exercise any control or franchises acquired through said transaction without invoking any approval under State authority; and any carriers * * * participating in a transaction approved or authorized under the provisions of this section shall be * * * relieved from the operation of * * * restraints, limitations, and prohibitions of law, Federal, State, or municipal, insofar as may be necessary to enable them to carry into effect the transaction so approved or provided for in accordance with the terms and conditions, if any, imposed by the Commission, and to hold, maintain, and operate any properties and exercise any control or franchises acquired through such transaction. * * *"

In its Report and Order of February 13, 1951, the Interstate Commerce Commission found that the purchase by plaintiff of the operating rights of the intervenor constituted a transaction within the scope of § 5(2)(a), and that said purchase would be consistent with the public interest.

The cases of Seaboard Air Line R. Co. v. Daniel, 333 U.S. 118, 68 S.Ct. 426, 92 L.Ed. 580, and State of Texas v. United States, 292 U.S. 522, 54 S.Ct. 819, 78 L.Ed. 1402, cited by both the plaintiff and the defendant are decisive of the issues here. In the Seaboard case the constitution and statutes of South Carolina provided that railroad lines within that state could be owned and operated only by state-created corporations. A foreign railroad corporation might, however, under South Carolina statutes, indirectly exercise some powers over its South Carolina operations by organizing a South Carolina subsidiary and by consolidating that corporation with itself, the consolidated result to be a corporation of South Carolina and of another state. The appellant was a Virginia corporation without such subsidiary or consolidation. Appellant had obtained Interstate Commerce Commission approval of its purchase of the railroad system pursuant to § 5 of the Interstate Commerce Act, as amended, the Interstate Commerce Commission having found that compliance with the South Carolina Railroad Corporation laws would result in delay and needless expense and that it would not be consistent with the public interest. South Carolina took the position that the Commission's order in attempting to override state laws was void, because outside the scope of the Commission's statutory authority. The State Supreme Court decided the case on a demurrer of appellant, construing the Commission's order as relieving appellant from compliance with the statutory and constitutional provisions, but agreeing with the respondents that the Commission lacked the power to enter the Order under § 5, and that the Order of the Commission could not override the State law with regard to incorporation therein. The Supreme Court of the United States reversed the State Court on the latter point, and held that § 5 of the Act does grant to the Interstate Commerce Commission the necessary power to override the South Carolina requirement that the appellant be incorporated within that State.

The Texas case also involved a railroad which was granted relief by the Court from state laws analogous to the state requirements in the Seaboard case.

Both of these cases involved railroads, and the defendants raise the question as to the applicability of the reasoning in those cases to a situation, as here, involving motor carriers. There is nothing in the statutes cited, however, which warrants that any distinction be made in this regard between railroads and motor carriers, and the defendants do not claim that any distinction is expressly made in the Interstate Commerce Act. Section 5 of the Act, and particularly § 5(2), has been held to apply to motor carriers. Falwell v. United States, D.C., 69 F.Supp. 71, affirmed 330 U.S. 807, 67 S.Ct. 1087, 91 L.Ed. 1264. The fact that the cases cited by the parties involved rail carriers does not mean that a different rule would apply to motor carriers, with respect to the power of the Interstate Commerce Commission to override conflicting state statutes. The defendants have not brought to the Court's attention any case so limiting the application of this power, and the language of the numerous cases cited by the plaintiff and intervenor is broad enough to include motor carriers as well as railroads. Seaboard Air Line R. Co. v. Daniel, supra; State of Texas v. United States, supra; Kansas City Southern Ry. Co. v. Daniel, 5 Cir., 180 F.2d 910. Furthermore, § 5(11) of the Act has been held to apply to motor carriers with reference to mergers of transportation companies. McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544. Speaking of the language and purpose of § 5(11), the United States Supreme Court stated at page 79, of 321 U.S., at page 376 of 64 S.Ct. of the McLean case that Congress' declaration of the transportation policy is "in terms which do not admit of nullification by reference to the varying conditions under which different types of carriers were brought within the statute's operation. It is not for this Court, or any other, to override a policy, or

an exemption from one, so clearly and specifically declared by Congress, whatever may be our views of the wisdom of its action." The Court held in that case that rail and motor carriers participating in a properly authorized consolidation were immune from prosecution under the federal antitrust laws.

A different view is not warranted with respect to the authority of the Interstate Commerce Commission to issue, in regard to either rail or motor carriers, orders which supercede state constitutional and statutory restrictions. 49 U.S.C.A. § 5(11). Cf. Seaboard Air Line R. Co. v. Daniel, supra; State of Texas v. United States, supra. The Court finds therefore that the Interstate Commerce Commission had the power and authority to issue its Report and Order of February 13, 1951, with reference to the plaintiff and the intervenor, although both are motor carriers, and although the laws to be superceded are state laws.

It is clear that this Order of February, 1951, is inconsistent and in conflict with § 1 of Article IX of the Amendments of the Constitution of Rhode Island, supra (note 1), and with § 3 of Chapter 125 of the General Laws of Rhode Island, 1938, supra (note 2). It is also clear under the authorities that the Order of the Interstate Commerce Commission is paramount to and supercedes the State constitutional and statutory provisions. Seaboard Air Line R. Co. v. Daniel, supra; State of Texas v. United States, supra.

It may be noted that the transfer to the plaintiff of Certificate No. 45 was in fact granted by the Division of Public Utilities. It was granted, however, "in view of the emergency which would exist in the event of the immediate discontinuation of (such) service * * *". Although it may be that this statement simply expressed the reason for granting the transfer, the Court is satisfied that under all the circumstances of this case there exists a cloud on the plaintiff's title to Certificate No. 45, and that this Court has jurisdiction to entertain the petition for a declaratory judgment for the removal of such cloud.

It is therefore adjudged and decreed that New England Greyhound Lines, Incorporated is entitled to own Certificate No. 45 granted to it on May 8, 1951 by the Division of Public Utilities of Rhode Island, and to operate motor vehicles for the carriage of passengers for hire thereunder, notwithstanding the provisions of § 1 of Article IX of the Amendments of the Constitution of Rhode Island, or the provisions of § 3 of Chapter 125 of the General Laws of Rhode Island, 1938.