ST. LOUIS SOUTHWESTERN RAIL-WAY COMPANY et al., Appellants,

v.

CITY OF TYLER, TEXAS et al., Appellees.

No. 23465.

United States Court of Appeals
Fifth Circuit.

April 5, 1967.

Rehearing Denied May 12, 1967.

Spears, District Judge, dissented on petition for rehearing.

D. L. Case, Dallas, Tex., Jack W. Flock, Clyde W. Fiddes, Roy P. Cosper, Tyler, Tex., for appellants.

Fred V. Hughes, Special Atty., Troy Smith, City Atty., Henry L. McGee, Jr., Asst. City Atty., Tyler, Tex., for appellees.

Before JONES and DYER, Circuit Judges, and SPEARS, District Judge.

JONES, Circuit Judge:

The appellee, City of Tyler, and three individuals, brought a suit in 1902 in a Texas district court against St. Louis Southwestern Railway Company of Texas, one of the appellants here, asserting that the Railway Company was bound by an agreement of a predecessor to maintain its general offices, shops and roundhouse in the City of Tyler, and seeking an injunction to prevent their removal. The district court entered a temporary injunction against the removal. After trial, the district court denied relief but retained the temporary injunction in effect pending an appeal. A Texas Court of Civil Appeal affirmed. City of Tyler v. St. Louis Southwestern Railway Co., 87 S.W. 238. The Supreme Court of Texas reversed and entered a judgment which, in part, provided:

> " * * * it is ordered adjudged and decreed that the plaintiffs in error * * * recover Judgment against defendant in error, the St. Louis Southwestern Railway Company of Texas, that said St. Louis Southwestern Railway Company of Texas, Shall Keep and maintain in said City of Tyler * * * its general offices, and shall Keep and maintain in said City its machine shops and it is further ordered, adjudged and decreed that the injunction heretofore granted on to wit; April 20th 1902, by the Judge of the District Court of Smith County, Texas * * * is hereby perpetuated * * *."

See City of Tyler v. St. Louis Southwestern Railway Co., 99 Tex. 491, 91 S.W. 1, appeal dismissed 212 U.S. 552, 29 S.Ct. 684, 53 L.Ed. 649; City of Tyler v. St. Louis Southwestern Railway Co., Tex., 405 S.W.2d 330. In 1889 the Texas legislature enacted a statute in these terms:

> "Every railroad company chartered by this State, or owning or operating any line of railway within this State, shall keep and maintain permanently its general offices within this State at the place named in its charter for the location of its general offices. If no certain place is named in its charter where its general offices shall be located and maintained, then said railroad company shall keep and maintain its general offices at such place within this State where it contracts or agrees to locate its general office for a valuable consideration." Vernon's Ann.Civ. St. art. 6275.

A similar provision of the same enactment required the maintenance of machine shops and roundhouses at such place as a railroad might have contracted to keep them. Vernon's Ann.Civ.St. art. 6277.

St. Louis Southwestern Railway Company, a Missouri corporation operating in six states, acquired all of the stock of St. Louis Southwestern Railway Company of Texas. The Missouri company, desiring to lease all of the property and facilities of its Texas subsidiary, applied to the Interstate Commerce Commission for authority to do so as is required by section 5(2) of the Interstate Commerce Act, 49 U.S.C.A. § 5(2) (a) (i). In its Report the Commission discussed at length the Texas statutory provisions, the outstanding injunction and concluded that the lessor and lessee should be relieved of the burden of the statute, the agreement and the injunction. The City Commission and the Chamber of Commerce of the City of Tyler supported the application, including the limitation against the applicability of the Texas statutes and the Tyler agreement. St. Louis Southwestern Railway Co. of Texas Lease, 290 ICC 205. The Commission said:

"That neither St. Louis Southwestern Railway Company nor St. Louis Southwestern Railway Company of Texas either directly or indirectly shall be required to maintain any general offices, machine shops, roundhouses, terminal facilities or public offices, within the meaning of the laws of Texas, on the lines of railroad now owned or operated by St. Louis Southwestern Railway Company of Texas at any particular place or places, or at any point thereon whatsoever, regardless of present or previous locations thereof; but shall have the right to change any existing location of general offices, machine shops, roundhouses, terminal facilities or public offices on such lines, and to relocate the same, and, from time to time, to change the same, and shall have the right to make all such locations, changes, and alterations as, in the judgment of St. Louis Southwestern Railway Company, will enable it to operate the unified properties in the public interest and with the greatest economy and efficiency; and neither the St. Louis Southwestern Railway Company nor the St. Louis South-western Railway Company of Texas, during the term of the lease, shall be obligated or bound to perform any contractual, statutory, or other obligations, with reference to such matters which may now or hereafter rest upon St. Louis Southwestern Railway Company of Texas or to which St. Louis Southwestern Railway Company might otherwise succeed by reason of the lease; and any and all such changes may be made, from time to time, by St. Louis Southwestern Railway Company as may be approved by the judgment of its officers or board of directors." 290 ICC 205, 223.

The Commission's order was entered, the lease was entered into and the Missouri company took over the operation of the properties and facilities of the Texas company. The lease provided that:

"During the term of this lease, there shall be no obligation upon the parties hereto, by statute, contract, or otherwise, to maintain machine shops, roundhouses, general or other offices or residences of officers, at any particular place or places, regardless of present or previous locations thereof."

The City, whether as the result of an election, public sentiment or other cause, had a change of heart and mind, and filed a petition in the state district court alleging that the Texas company was moving its general offices and machine shops from Tyler and praying for a cease and desist order and for an order to show why it and its officers should not be held in contempt for violating the injunctive provisions of the order. The railway company removed the petition to the Federal district court which promptly remanded the proceeding to the state court. See City of Tyler v. St. Louis Southwestern Railway Co., 405 S.W.2d 330.

The two railway companies and such of the officers and employees of the Missouri company as were named in the show cause order brought suit in the Federal district court seeking a declaratory judgment (1) that the motion of the City in the state court to cease and desist and to show cause are for the purpose of

suspending and annulling the order of the Interstate Commerce Commission; (2) that the Missouri corporation is entitled to do all things authorized by the order of the Commission unless the order is set aside by a three-judge statutory court; (3) that the Texas company has been relieved by the Commission's order of any duty to maintain offices and shops at Tyler; and (4) that the injunction of the Texas courts is unenforceable. The complaint asked for an injunction against the City from further litigation in the state court of the questions involved. Jurisdiction was asserted, primarily, on the grounds that a Federal question and one arising under the commerce clause were presented. 28 U.S.C.A. §§ 1331, 1337. The district court concluded that there was no Federal jurisdiction and dismissed the complaint. A different result is reached here and the judgment of the district court is reversed. The jurisdictional issue is the only question before us.

We think the conclusion is inescapable that this case is controlled by Florida East Coast Railway Co. v. Jacksonville Terminal Co., 5th Cir. 1964, 328 F.2d 720, cert. den. 379 U.S. 830, 85 S.Ct. 59, 13 L.Ed.2d 38. See also Jacksonville Terminal Co. v. Florida East Coast Railway Company, 5th Cir. 1966, 363 F.2d 216, cert. den. Atlantic Coast Line R. Co. v. Florida East Coast Railway Co., 385 U.S. 950, 87 S.Ct. 321, 17 L.Ed.2d 227. The railroads entering Jacksonville were joint owners of Jacksonville Terminal Company. The affairs of the Terminal company were controlled under an operating agreement which provided that President or General Manager or other officer subject to election by the Board of Directors would serve only by unanimous consent of all of the railroads and should be dismissed upon the written request of any one of the Railway companies. The operating agreement was required by the Interstate Commerce Act to have the approval of the Interstate Commerce Commission. 49 U.S.C.A. § 5(2). One of the railway companies made a written request for the dismissal of the President and the General Counsel of the Terminal company. The request was refused by the Terminal company, supported by two of the railway companies. The demanding railroad brought suit in a Federal district court against the Terminal company and the two railroad companies supporting its position, seeking an injunction and damages. Federal jurisdiction, as in the case before us, was based upon a Federal question and reliance was placed upon 28 U.S.C.A. §§ 1331 and 1337. It was held that the contract, which was authorized by Federal statute and made legal only because of the Federal statute, could be construed by the Federal court.

The similarity of the *Florida East Coast* case to the case before us is clearly apparent. Each involves the validity of an agreement—there a management contract, here a lease—which was authorized by the Interstate Commerce Commission acting under a grant of power made to it by a statute of the United States Congress. Without its authorization neither the management contract in that case nor the lease contract in this case would have validity. The case before us involved the statutory power of the Commission to authorize and give validity to the lease provision here relied upon by the appellant railroad companies, and which the appellee City asserts to exceed the grant of power of the Congress to the Commission. The case is Federal and the Federal courts have jurisdiction.

Two recent Court of Appeals decisions, Chicago & North Western Railway Co. v. Toledo, Peoria & Western Railroad Co., 7th Cir. 1963, 324 F.2d 936, decided before the Florida East Coast case, and McFaddin Express, Incorporated v. Adley Corporation, 2nd Cir. 1965, 346 F.2d 424, cert. den. 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539; decided after the *Florida East Coast* case, cannot, in our opinion be reconciled with it.

 We are not only impelled by stare decisis to follow the law of this circuit as the *Florida East Coast* decision has stated it, but we think it is a declaration of the better rule.

The City, by its brief, has suggested that in a case such as this, where there is a possibility of a state-federal conflict,

the Federal courts should abstain until the state courts have acted. It may be questioned, perhaps, that abstention is desirable where a contempt citation is more than threatened. But this is a matter that can be presented to the district court. On this appeal we decide only that the Federal district court has jurisdiction.

The judgment of the district court is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

PER CURIAM:

It is ordered that the petition for rehearing in the above entitled and numbered cause be, and the same is hereby
Denied.

SPEARS, District Judge (dissenting):

While I agree that the district court had jurisdiction of this Federal declaratory judgment suit, I am convinced, upon reflection, that since he was under no compulsion to exercise such jurisdiction, and there has been no showing that he abused his discretion in refusing to do so after having concluded that abstention was proper, his judgment should be affirmed. See Brillhart v. Excess Insurance Co. of America, 316 U.S. 491, 62 S. Ct. 1173, 86 L.Ed. 1620 (1942). As a consequence, I respectfully dissent.

In granting the motion to dismiss, the late lamented Judge Sheehy commented that "a Federal court should abstain from entertaining any Federal declaratory judgment action when the questions involved * * * can just as well be tried in the State court as they could in the Federal court", and that "the declaratory judgment remedy should not be invoked to determine the validity of a defense in a pending case in a State court", a proposition which, he added, "fits this case like a glove". Under the circumstances of this case, I can see no reason to burden a new judge with a rehash of the same matter.

This is not a suit to enforce an order of the Interstate Commerce Commission, as authorized by Title 28 U.S.C. Sections 2321–2325. The United States is not a party, and the Commission's order was *permissive* not *mandatory*.

The judgment sought to be enforced in the State court adjudicated rights under a contract based upon a valuable consideration. It was perpetuated by the Supreme Court of Texas, the highest court of the State in such matters, long before the lease agreement referred to was approved by the Commission.

The State court has the power to determine whether its final judgment was superseded by the order of the Commission, Seaboard Air Line Railroad Company v. Daniel, 333 U.S. 118, 68 S.Ct. 426, 92 L.Ed. 580 (1948), and it is the only court having jurisdiction to pass upon the question of contempt. Since its decision would involve a federal question, review by the Supreme Court of the United States is authorized. Title 28 U.S.C. Section 1257. Therefore, abstention would certainly be more desirable than a situation which could find the Federal court concluding that the Texas company has been relieved by the Commission's order of any duty to maintain offices and shops at Tyler, and the state court holding to the contrary. In that event, unless the interpretation by the Federal court were to be coupled with an injunction stopping all State court proceedings, a serious conflict would develop. But such an injunction, even if allowed under Title 28 U.S.C. Section 2283, would have the practical effect of enforcing the Commission's order which the court cannot do in the absence of the United States as a party. Title 28 U.S.C. Section 2322.

Judge Sheehy undoubtedly felt, and I agree, that the initial determination of the question by the State courts, subject to review by the Supreme Court of the United States, will eliminate the possibility of conflict, and serve to promote and maintain the delicate balance between the State and Federal courts.