883 F.2d 1079
 280 U.S.App.D.C. 135
 RAILWAY LABOR EXECUTIVES ASSOCIATION, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
Missouri-Kansas-Texas Railroad Co., Union Pacific Corp.,
Southern Pacific Transportation Co., Intervenors.
 No. 88-1391.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 28, 1989.
Decided Aug. 29, 1989.
 
 Richard S. Edelman, with whom William G. Mahoney and John O.B. Clarke, Jr., Washington, D.C., were on the brief, for petitioner.
 Laurence H. Schecker, Atty., I.C.C., with whom Robert S. Burk, Gen. Counsel, and John J. McCarthy, Jr., Deputy Associate Gen. Counsel, I.C.C., were on the brief, for respondents. John J. Powers III and Robert J. Wiggers, Attys., U.S. Dept. of Justice, Washington, D.C., entered appearances for respondents.
 Gregg H. Levy, with whom Charles A. Miller, Arvid E. Roach II, James V. Dolan, Washington, D.C., Mark B. Goodwin, Thurmond A. Miller, and John MacDonald Smith, San Francisco, Cal., were on the brief, for intervenors.
 Before WALD, Chief Judge, and ROBINSON and BUCKLEY, Circuit Judges.
 Opinion for the court filed by Circuit Judge BUCKLEY.
 BUCKLEY, Circuit Judge:
 
 
 1
 The Railway Labor Executives Association, a union representing rail carrier employees, petitions for review of an Interstate Commerce Commission order approving a rail carrier consolidation application. In its approval order, the Commission purported to relieve the participants in the transaction from their obligations under the Railway Labor Act and applicable collective bargaining agreements. The union argues that the Commission lacks statutory authority to free carriers from these obligations and that the Commission failed to consider the Railway Labor Act's policies in its approval order. We conclude that it is unnecessary to reach the merits of these arguments. First, the Commission's statement regarding the Act and collective bargaining agreements is without legal force or effect and is therefore not ripe for review. Second, the union failed to raise the issue of the Commission's consideration of the Act's policies during the course of the administrative proceedings. Accordingly, we dismiss the petition for review.
 
 I. BACKGROUND
 
 2
 The Interstate Commerce Act ("ICA") provides that one rail carrier may acquire and exercise control over another "only with the approval and authorization of" the Interstate Commerce Commission ("ICC" or "Commission"). 49 U.S.C. Sec. 11343(a) (1982). The ICC must approve an application "when it finds the transaction is consistent with the public interest." Id. Sec. 11344(c). The Commission's "public interest" evaluation must take into account, among other things, "the interest of carrier employees affected by the proposed transaction." Id. Sec. 11344(b)(1)(D). A participant in an ICC-approved transaction
 
 
 3
 is exempt from the antitrust laws and from all other law, including State and municipal law, as necessary to let that person carry out the transaction, hold, maintain, and operate property, and exercise control or franchises acquired through the transaction.
 
 
 4
 Id. Sec. 11341(a) (emphasis added) ("section 11341(a)").
 
 
 5
 In November 1986, the Union Pacific Railroad Company ("UP") applied to the ICC for permission to acquire and exercise control over the Missouri-Kansas-Texas Railroad Company ("MKT"), a regional rail carrier. The UP-MKT's Railroad Control Application indicated that the carriers intended their "complementary rail systems" to be "operated as a single, coordinated system under common direction and control," and that MKT personnel would be "fully integrated into UP's management structure." It also claimed that the proposed consolidation would produce significant public benefits, including substantial operating efficiencies, reduced transportation costs, and service improvements for shippers.
 
 
 6
 UP and MKT included in their application an extensive operating plan discussing post-consolidation operations as well as detailed analyses of the impact of the proposed transaction on employees. They also provided the ICC with their responses to a set of union interrogatories concerning the consolidation's impact on labor. The carriers acknowledged that the operational changes would result in the elimination of some jobs and the transfer of others, as well as changes in rates of pay, rules, and working conditions for affected employees.
 
 
 7
 Various unions representing UP's and MKT's employees, including petitioner, the Railway Labor Executives Association ("RLEA"), commented on the UP-MKT proposal. The RLEA argued that in this instance the Commission was required to impose employee protection arrangements greater than those normally imposed in merger cases and asserted that the carriers' unilateral implementation of the proposed operational changes (and resulting breach of existing collective bargaining agreements) would violate the Railway Labor Act, 45 U.S.C. Secs. 151 et seq. (1982) ("RLA").
 
 
 8
 In Union Pacific Corp.--Control--Missouri-Kansas-Texas R.R. Co., 4 I.C.C.2d 409 (1988), the ICC approved UP's application to control MKT, subject to certain conditions. The ICC found that any adverse impact that the transaction would have on employees was justifiable because the transaction would promote the desired goal of increased efficiency. Id. at 511. Nevertheless, in order to protect workers affected by the transaction, the ICC imposed the standard "New York Dock " conditions (promulgated in New York Dock Ry.--Control--Brooklyn Eastern Dist. Term., 360 I.C.C. 60, aff'd sub nom. New York Dock Ry. v. United States, 609 F.2d 83 (2d Cir.1979)). 4 I.C.C.2d at 512-13. Those conditions include a dispute resolution procedure that culminates in binding arbitration if the parties cannot reach an agreement. The ICC rejected the RLEA's request for more stringent protections, determining that the New York Dock conditions adequately safeguarded employee interests. Id. Finally, the Commission ruled that section 11341(a) empowered it to exempt the transaction from the RLA and applicable collective bargaining agreements. Id. at 514.
 
 
 9
 The RLEA petitioned for review; UP and MKT have intervened. We have jurisdiction under 28 U.S.C. Sec. 2342(5) (1982).
 
 II. DISCUSSION
 
 10
 The RLEA attacks the Commission's decision on two grounds. First, the RLEA argues that the ICC's authorization of carrier consolidations under 49 U.S.C. Secs. 11343(a) and 11344(c) does not discharge a carrier's duty to comply with the RLA or existing collective bargaining agreements. Second, the RLEA claims that the ICC failed to consider the policies of the RLA in approving the UP-MKT application as in the public interest. We address each of these issues in turn.
 
 
 11
 A. Exempting Carriers from the RLA and Collective Bargaining Agreements
 
 
 12
 In approving the UP-MKT application, the Commission stated that section 11341(a) authorized it to exempt the carriers from compliance with the RLA and collective bargaining agreements:
 
 
 13
 The self-effecting exemption [of section 11341(a) ] enables the carriers to implement not only the legal and financial, but also the operational aspects of the transaction upon consummation, without the need to apply to courts or labor unions (except as required under the labor conditions we impose) for authority to do so. Any other result would render the exemption, as well as Commission approval of the transaction, meaningless.
 
 
 14
 4 I.C.C.2d at 514.
 
 
 15
 The RLEA argues that the Commission erred in several respects. First, it contends that section 11341(a)'s exemption from "other law[s]" for carriers participating in ICC-approved transactions does not apply to the RLA and obligations under existing collective bargaining agreements. Second, the RLEA asserts that section 11341(a) immunity only governs the financial transaction and not, as the ICC asserts, subsequent operational changes made in carrying out the transaction. Third, the RLEA maintains that the Commission lacked the power to decide that its authorization of the UP-MKT transaction relieved the carriers of their obligations under other laws.
 
 
 16
 Our recent decision in Brotherhood of Railway Carmen v. ICC, 880 F.2d 562 (D.C.Cir.1989) ("Carmen "), simplifies our analysis here. We held in Carmen that section 11341(a) does not empower the ICC to free participants in an approved transaction from compliance with existing collective bargaining agreements. 880 F.2d at 567-71. In addition, we concluded that the ICC may indeed determine to exempt an approved transaction from other laws that would bar its effectuation. Id. at 571-72. We expressly left open, however, the question of whether the exemption provision "may operate to override provisions of the RLA." Id. at 570.
 
 
 17
 Although that issue is squarely presented here, we find it inappropriate to consider the question because even if section 11341(a) did empower the ICC to exempt the carriers from the RLA's strictures, the Commission's action in this case is not ripe for review. The language of section 11341(a) compels this conclusion. That provision states that once the ICC approves a transaction, the participants are "exempt ... from all other law, including State and municipal law, as necessary to let that person carry out the transaction...." As noted by the four Justices who reached the issue in ICC v. Brotherhood of Locomotive Eng'rs, 482 U.S. 270, 298-99, 107 S.Ct. 2360, 2376, 96 L.Ed.2d 222 (1987) ("BLE ") (Stevens, J., concurring), the exemption is self-executing. Once the ICC approves the transaction, immunity from other laws automatically attaches without further action by the Commission. See Carmen, 880 F.2d at 571 (citing New York Central Securities Corp. v. United States, 287 U.S. 12, 26-27, 53 S.Ct. 45, 48-49, 77 L.Ed. 138 (1932), and Claiborne-Annapolis Ferry Co. v. United States, 285 U.S. 382, 391, 52 S.Ct. 440, 442, 76 L.Ed. 808 (1932)).
 
 
 18
 The statutory language makes equally clear, however, that the participants are only exempt from other laws to the extent necessary to carry out the approved transaction. If an exemption is necessary, it may be no broader than required to enable the transaction to be effected. These determinations are factual ones that can only be made by a tribunal faced with a claim that a transaction will violate a law:
 
 
 19
 This does not mean ... that a party claiming an exemption on the basis of Sec. 11341 need merely assert that its conduct is "necessary" in order to prevail in its claim. Any tribunal that is faced with a claim that a party is violating some "other law" has the responsibility of determining whether an exemption is "necessary to let that person carry out the transaction...."
 
 
 20
 BLE, 482 U.S. at 300 n. 13, 107 S.Ct. at 2377 n. 13 (Stevens, J., concurring) (quoting section 11341(a)).
 
 
 21
 As we made clear in Carmen, the ICC may consider a question of exemption, and make the "necessity" determination, when the issue is properly before it. 880 F.2d at 571-72. For example, the Supreme Court has upheld the Commission's authority, pursuant to section 11341(a)'s predecessor, to override state laws that presented a barrier to the consummation of an approved transaction. See, e.g., Schwabacher v. United States, 334 U.S. 182, 200-01, 68 S.Ct. 958, 967-68, 92 L.Ed. 1305 (1948) (ICC may override state law granting dissenting stockholders right to block merger); Seaboard Air Line R.R. Co. v. Daniel, 333 U.S. 118, 119-21, 68 S.Ct. 426, 427-28, 92 L.Ed. 580 (1948) (state law requiring that railroad lines within state be run only by state-chartered corporations); Texas v. United States, 292 U.S. 522, 531-32, 54 S.Ct. 819, 824-25, 78 L.Ed. 1402 (1934) (state law requiring railroads to maintain general offices within state).
 
 
 22
 Here, however, the ICC has not determined--and was not asked to determine--whether an exemption from the RLA was necessary to effectuate the UP-MKT consolidation. Rather, when approving the consolidation, the Commission merely restated the statutory scope of section 11341(a) without making any factual findings. Nor did the Commission purport to make findings about necessity that would foreclose future labor union arguments that the exemption did not attach to a particular operating change. It is therefore clear that the ICC's blanket pronouncement that the UP-MKT transaction is exempt from the RLA has no present or future legal force or effect. And because it is without effect, the Commission's pronouncement fails both prongs of the ripeness test: it is neither fit for judicial review, nor will the parties suffer any hardship as a result of postponing review. See Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515-16, 18 L.Ed.2d 681 (1967); cf. Arkansas Power & Light Co. v. ICC, 725 F.2d 716, 723-26 (D.C.Cir.1984) (non-binding agency statement not ripe for review when further proceedings required and petitioners suffer no hardship).
 
 
 23
 The RLEA suggests that if we do not review the ICC's determination at this time, our decision in United Transp. Union v. Norfolk and Western Ry. Co., 822 F.2d 1114 (D.C.Cir.1987) ("UTU "), cert. denied, 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988), would preclude, as a "collateral attack" on the Commission's order, any subsequent challenge under the RLA to the implementation of an operational change related to the UP-MKT transaction. In UTU, the Commission approved a rail transaction and imposed employee-protective conditions (similar to those imposed here) providing that all disputes would be resolved through binding arbitration. The union later brought an action in district court arguing that an arbitrator's decision violated the RLA. We held that the district court was without jurisdiction to hear the case because the arbitrator's decision was a final order of the Commission, which, under the statutory scheme, see 28 U.S.C. Secs. 2321(a), 2342(5), must be appealed directly to a court of appeals. UTU, 822 F.2d at 1120-21.
 
 
 24
 UTU is inapposite here. The RLEA's concern rests on the unfounded assumption that the ICC has effectively freed the carriers from their obligation to comply with the RLA in implementing proposed operating changes. We hold, however, that the Commission's pronouncement in this case concerning the RLA is without effect. Therefore it cannot preclude a later challenge regarding a proposed operational change.
 
 
 25
 B. The ICC's Consideration of the RLA's Policies
 
 
 26
 In assessing whether a proposed transaction is in the public interest, the ICC must consider "the interest of carrier employees affected by the proposed transaction." 49 U.S.C. Sec. 11344(b)(1)(D). The ICC in this case did evaluate the effect of the transaction on UP's and MKT's employees. For example, it found that with the imposition of the New York Dock protective conditions, "the transaction [is] consistent with the public interest as it concerns carrier employees." 4 I.C.C.2d at 511. It also noted that while some jobs would be affected, those changes would lead to increased efficiency, "a goal to be encouraged." Id.
 
 
 27
 The RLEA contends, however, that the ICC must consider the policies of other laws in assessing the "public interest," and that its treatment of the interests of carrier employees was inadequate because the Commission failed to consider the policies embodied in the RLA. According to the RLEA, those policies include the encouragement of collective bargaining, the voluntary resolutions of disputes over changes in collective bargaining agreements, and the availability of self-help if the parties cannot reach agreement. The RLEA argues that because the ICC did not consider these policies, its decision must be overturned.
 
 
 28
 Whatever the merits of the RLEA's position, we decline to consider it because the issue was not explicitly raised during the course of the administrative proceedings. While the RLEA's submissions to the Commission contained brief references to the provisions of the RLA, the union failed to assert that the Commission was required to take the policies of the RLA into specific consideration in its determination of the public interest. Nor did it explain why those policies required the Commission to reach a different conclusion. Thus, "by neglecting timely to put the [ICC] on proper notice of its objections, [the RLEA] has forfeited its right to have this court examine those objections on the merits." Northside Sanitary Landfill, Inc. v. Thomas, 849 F.2d 1516, 1519 (D.C.Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989); see also Eagle-Picher Indus., Inc. v. EPA, 822 F.2d 132, 147 (D.C.Cir.1987); Washington Ass'n for Television & Children v. FCC, 712 F.2d 677, 680 (D.C.Cir.1983).
 
 III. CONCLUSION
 
 29
 We hold that the Commission's statement that it had the authority to exempt UP and MKT from the RLA was without legal force and therefore does not present us with a ripe controversy. Because the RLEA failed to raise the issue during the administrative proceedings, we also decline to consider the RLEA's argument that the Commission failed to take the policies of the RLA into consideration when making its determination of the public interest. Accordingly, the petition for review is Dismissed.