**CITY OF NASHVILLE, TENNESSEE,**
**Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission,**
**Defendants.**

**Civ. No. 2354.**

United States District Court
M. D. Tennessee,
Nashville Division.

May 24, 1957.

George F. McCanless, Atty. Gen., State of Tenn., LaRoe, Winn, & Moerman, Washington, D. C., Waller, Davis & Lansden and Elmer D. Davies, Jr., Davidson County Atty., Nashville, Tenn., for plaintiff.

Fred Elledge, Jr., U. S. Atty., James E. Kilday and E. Riggs McConnell, Department of Justice, Washington, D. C., for defendants.

Hooker, Keeble, Dotson & Harris, Nashville, Tenn., W. L. Grubbs, Louisville, Ky., for L. & N. R. Co.

Robert W. Ginnane, Washington, D. C., Interstate Commerce Commission, for defendants.

Walter Harwood, Nashville, Tenn., for Employees of N., C. & St. L. R. Co.

Before MARTIN, Circuit Judge, and DARR and SHELBOURNE, District Judges.

## PER CURIAM.

The undersigned three-judge court was assembled pursuant to sections 2284 and 2321–2325, Title 28, United States Code, for the hearing of an application for interlocutory injunction. The court has considered the pleadings and the proceedings and evidence adduced before the Interstate Commerce Commission, the entire record in the case, and the oral arguments and briefs of the attorneys for the plaintiff, for the defendants, and for all the intervenors, constituting all the parties. It was agreed that the hearing would be a final hearing on the merits upon demand for a permanent injunction.

The court is of opinion that the litigation will be most expeditiously and, at the same time, adequately disposed of finally by the promulgation of findings of fact and conclusions of law, instead of by a lengthy opinion. Accordingly, the following findings of fact and conclusions of law are filed for entry.

### Findings of Fact

1. The Louisville and Nashville Railroad Company, The Nashville, Chattanooga & St. Louis Railway, the Atlantic Coast Line Railroad Company, and The Atlantic Coast Line Company, hereinafter sometimes referred to collectively as the applicants, and individually as the Kentucky Company, the Tennessee Company, the Coast Line, and the Connecticut Company, respectively, or by the distinctive name in their respective corporate titles, on January 28, 1955, jointly applied for authority under Section 5(2) of the Interstate Commerce Act, as amended, 49 U.S.C.A. § 5(2), to merge the properties and franchises of the Tennessee Company into the Kentucky Com-

pany for ownership, management, and operation. The Connecticut Company and the Coast Line joined in the application because of their control, through stock ownership, of the Kentucky Company.

2. The plaintiff, City of Nashville, and the intervening plaintiffs, State of Tennessee, Tennessee Public Service Commission, Davidson County, Tennessee, and the N., C. & St. L. Railway Employees Job Protection Association, intervened before the Interstate Commerce Commission in opposition to the merger. Hearings were held at Washington, D. C., on August 23 to August 26, 1955, and at Nashville, Tennessee, on August 30 to September 1, 1955. Upon petition of the City of Nashville, et al., the Commission, by Division 4, ordered a further hearing at Washington on September 13, 1955, for the purpose of adducing testimony with respect to a routing and solicitation agreement between the Kentucky Company and the Tennessee Company which the Examiner previously had refused to require the applicants to furnish for the record. The Examiner filed a proposed report, recommending the merger on or about June 21, 1956. Exceptions were field by the plaintiffs and intervening plaintiffs; oral argument before the full Commission was scheduled and held; and, on March 13, 1957, the Commission released a report and order, both dated March 1, 1957, approving the merger. The order was made effective forty days from date, to-wit, on April 9, 1957. The complaint in this case, seeking to set aside and vacate the order of the Commission, was filed March 29, 1957, and a temporary restraining order was issued on April 8, 1957.

3. The application stated that the Connecticut Company has outstanding 235,200 shares of common stock, each share having one vote, and that there were 973 stockholders as of November 13, 1953. The application stated further that, as of November 15, 1954, Mercantile-Safe Deposit & Trust Company, 13 South Street, Baltimore 2, Maryland, owned 86,313 shares, and Safe & Company, 13 South Street, Baltimore 2, Maryland, owned 42,636 shares. Safe & Company is a nominee for Mercantile-Safe Deposit & Trust Company. At the hearing before this court, plaintiff filed as an exhibit "Supplemental Application of Mercantile-Safe Deposit & Trust Company and Motion to Dismiss said Supplemental Application" filed July 6, 1956, with the Interstate Commission in Finance Docket No. 19261, involving application of Atlantic Coast Line Railroad Company and the Atlantic Coast Line Company, under Section 5(2) of the Interstate Commerce Act, for authority to purchase the properties of the Florida East Coast Railway Company. This supplemental application, verified by Thomas B. Butler, President, who is also a director of the Kentucky Company, states that the Mercantile-Safe Deposit & Trust Company, as sole Trustee under various trusts, holds a majority of the voting stock of the Connecticut Company and also holds additional amounts in other fiduciary capacities, and 4,725 shares outright. Mercantile-Safe Deposit & Trust Company did not join in the application in the proceeding here involved.

4. The plaintiff, City of Nashville, brought this suit to annul, vacate and set aside the report and order of March 1, 1957, of the Interstate Commerce Commission in Louisville and Nashville Railroad Company, et al., Merger, etc., authorizing, under Section 5(2) of Title 49 U.S.C.A., the merger of The Nashville, Chattanooga & St. Louis Railway into the Louisville and Nashville Railroad Company and the acquisition of direct control by the Atlantic Coast Line Railroad Company of the surviving corporation and indirect control of such corporation by The Atlantic Coast Line Company, holding company. The Commission's order was released on March 13, 1957.

The report and order of March 1, 1957, also authorize, under Section 20a of Title 49 U.S.C.A., the issuance by applicant, Louisville and Nashville Railroad Company, of additional shares of stock and

the assumption by the Louisville and Nashville Railroad Company of obligation and liability in respect of the securities of The Nashville, Chattanooga & St. Louis Railway.

5. Interveners, as plaintiffs, are the State of Tennessee, the Tennessee Public Service Commission, the County of Davidson, Tennessee, Robert L. Bryson, Luther Thomas Lambert and Vernon H. Hedgepath, individually and as representative of a class composed of 839 employees of The Nashville, Chattanooga & St. Louis Railway, and the N., C. & St. L. Railway Employees Job Protection Association. Interveners, as defendants, are the Louisville and Nashville Railroad Company and The Nashville, Chattanooga & St. Louis Railway. These interventions are authorized by section 2323, Title 28 United States Code.

6. On April 8, 1957, a temporary restraining order was issued by John D. Martin, United States Circuit Judge sitting by designation as District Judge of the United States District Court for the Middle District of Tennessee, Nashville Division, staying the operation of the Commission's order. Such temporary restraining order was issued pursuant to Section 2284 of Title 28 United States Code, to remain in effect until the hearing and determination of the issues by this court.

7. In its report and order, the Commission found that, subject to certain prescribed conditions and to terms and conditions which it found to be just and reasonable, the proposed merger is within the scope of sub-paragraph (a) of Section 5(2) of Title 49 U.S.C.A., and that it will be consistent with the public interest.

8. The Commission found that the stockholders of both involved companies had voted for the merger. In both companies there was more than a majority of the shares entitled to vote cast for the merger. The only state law which could alter the majority vote requirement of Section 5(11) of Title 49 U.S.C.A. is Section 2610 of Williams' Tennessee Code (Section 65–601 of Tennessee Code

Annotated), which requires of Tennessee corporations (The Nashville, Chattanooga & St. Louis Railway being such a corporation) a vote of "three-fourths in amount of the capital stock of said company present and voting." This requirement was met in the vote cast for the merger by stockholders of The Nashville, Chattanooga & St. Louis Railway.

9. A comprehensive record was made before the Commission, which held three separate hearings. The transcript of testimony covers 1,733 pages. There were numerous and elaborate exhibits. Extensive briefs, exceptions to the Examiner's proposed report and replies to such exceptions were submitted to the Commission, numerous other documents were filed, and the parties were heard on oral argument by ten members of the Commission, one member not participating. The decision of the Commission was unanimous.

10. The Commission concluded that "the merger would enhance the adequacy of service by the merged companies, and would constitute the best use of the facilities" of the involved companies; that savings approximating $3,243,123 per annum—and probably more—may be expected from the merger; that such "savings and improved efficiency of operation necessarily would strengthen the applicants, and render them capable of better service"; that "Applicants have spent vast sums of money in improvements to their equipment and plant"; that additional large improvements are in contemplation, but that "Nothing now left to be done offers such great opportunity for improvement in efficiency and economy as does the proposed merger"; and that "anticipated accomplishments from the merger would give assurance of a stronger and financially more stable railroad."

11. The Commission found that the Louisville and Nashville Railroad Company owns 74.9% of the capital stock of The Nashville, Chattanooga & St. Louis Railway; that the former company acquired control of the latter company in January, 1880; "that these two

railroads have been closely coordinated in service, operation, and managerial relations for more than 75 years, and that the policy of such operation has been harmonious in the interest of both carriers during that long period of time"; and that in such circumstances "it cannot be said that an antagonistic competitive situation has existed between them." The Commission held that there would be a reduction in competition to the extent that competition between the two railroads exists. It found, however, "that the reduction in competition resulting from the merger would be consistent with the public interest."

12. The Interstate Commerce Commission recognized that the economy of the City of Nashville would be adversely affected through loss of employment and loss of a railroad headquarters, and that while shippers will have a certain election of routes, service via such routes will be by the Louisville and Nashville Railroad instead of by the Louisville and Nashville or the Nashville, Chattanooga & St. Louis Railway. The Commission stated, however, that "even approaching this problem from the standpoint that the applicants are truly competitive, it is our view and we find that for the reasons herein set forth the advantages to the public interest from the merger outweigh the disadvantage to the single locality of Nashville."

13. Nashville, a large and important Southern city, Capital of Tennessee, is today served by both the Kentucky and Tennessee Companies and by the Tennessee Central. The Tennessee Central is a small railroad with termini at Hopkinsville, Kentucky, and Harriman, Tennessee. In comparison, Nashville's surrounding neighboring cities have materially more trunk line rail service. Louisville, Birmingham and Memphis are reached by eight trunk lines each; Atlanta, seven; Evansville, five; Chattanooga, four; and Knoxville, two. With the elimination of the Nashville, Chattanooga & St. Louis Railway, Nashville would be served by only one trunk line railroad and would lose the benefit of such competition as now exists between the Louisville and Nashville Railroad and the Nashville, Chattanooga & St. Louis Railway in solicitation and service. Nashville's economy would be adversely affected by the removal of the headquarters of the Tennessee Company and by the elimination or removal of numerous employees of the Tennessee Company who now reside in Nashville and its environs. Many of these employees have been with the company for many years; and, while under the terms of the merger any loss of earnings for four years will be made up, some of them would be required to sell their homes in Nashville and move elsewhere with their families, others would be under the necessity of obtaining other employment with all the disadvantages incident to changing jobs late in life.

The Commission found that a major portion of the savings expected to be accomplished by the merger will be from the displacement of employees.

14. The order of the Interstate Commerce Commission expressly provides that the merger is approved and authorized upon conditions: among others, that it is "subject to the conditions for the protection of railway employees." In its report, the Commission stated its conviction that any disputes as to particular employees or group of employees affected by the actions of the applicants in consummating the merger may be resolved by following the procedure set forth in Condition No. 8, as prescribed in Oklahoma Railway Co., Trustee Abandonment, 257 I.C.C. 177 (see especially pages 192, 196, and the discussion entitled "Conclusions" at pages 196 to 202), incorporated in the New Orleans passenger terminal conditions previously prescribed. Such condition provides for consideration and determination by an arbitration committee of questions regarding the eligibility for protection of persons or groups elsewhere described in the conditions.

15. Toward the conclusion of a lengthy colloquy concerning the protection of rights of the Nashville, Chatta-

nooga & St. Louis Railway employees, counsel for the Interstate Commerce Commission, Robert W. Ginnane, Esquire, made the statement that the Commission is without power, in connection with a reorganization, to tell carriers who shall or shall not be laid off as a result of the merger. He stated further that the Commission's power and responsibility are limited to specifying protection of those who are laid off, the choice of those laid off being left to the managerial discretion of the carriers as limited by their collective bargaining agreements. The attorney stated, moreover, that the Commission merely identifies positions which would be affected and does not undertake to state what individuals would be affected.

The attorney for the Louisville and Nashville Railroad Company and the Nashville, Chattanooga & St. Louis Railway Company stated that, in the merger agreement between the railroads, it is expressly provided that the Louisville and Nashville will assume any and all obligations and contracts of the Nashville, Chattanooga & St. Louis Railway Company, *including its negotiated union bargaining agreements.*

16. A temporary restraining order was issued in this cause on April 8, 1957, by John D. Martin, United States Circuit Judge, sitting by designation during the present illness of William E. Miller, Judge of the United States District Court for the Middle District of Tennessee; and this cause was set for final hearing before a three-judge court on May 7, 1957. The Chief Judge of the United States Court of Appeals, Sixth Circuit, designated Leslie R. Darr, United States District Judge for the Eastern District of Tennessee, and Roy M. Shelbourne, United States District Judge for the Western District of Kentucky, to sit as two members of the three-judge court, with United States Circuit Judge Martin completing the court. The designated three-judge court assembled and heard elaborate oral arguments at morning and afternoon sessions on May 7, 1957, following which the case was duly submitted.

### Conclusions of Law

1. Section 1336 of Title 28 United States Code, confers on district courts the jurisdiction to enjoin, set aside and annul orders of the Interstate Commerce Commission pursuant to the procedure outlined in Section 2284. The plaintiff and the intervening plaintiffs have standing to maintain this action. Baltimore & O. R. Co. v. United States, 264 U.S. 258, 267–269, 44 S.Ct. 317, 68 L.Ed. 667; State of Georgia v. Pennsylvania R. Co., 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051.

2. Section 5(2) of the Interstate Commerce Act is constitutional. United States v. Lowden, 308 U.S. 225, 60 S.Ct. 248, 84 L.Ed. 208. The development and maintenance of an economical and efficient railroad system is a matter of primary national concern and legislation must be read with this purpose in mind. Seaboard Air Line R. Co. v. Daniel, 333 U.S. 118, 124, 125, 68 S.Ct. 426, 92 L.Ed. 580. Compare Railroad Commission of State of Wisconsin v. Chicago, B. & Q. R. R. Co., 257 U.S. 563, 590, 42 S.Ct. 232, 66 L.Ed. 371.

3. By Section 5(2) of the Interstate Commerce Act, the Interstate Commerce Commission is empowered to authorize the merger of two or more railroads without regard to the provisions of the laws of any State, except that State law, if any, may govern the size of the stockholder vote required for approval of a merger.

4. The order of the Commission herein had for its purpose to authorize the merger of The Nashville, Chattanooga & St. Louis Railway into Louisville and Nashville Railroad Company, State law notwithstanding, except to the extent, if any, that State law governs the size of the stockholder vote required for approval of the merger.

5. The findings of the Commission are full and complete and are supported by substantial evidence. They

constitute sufficient basis for the order of the Commission herein.

■ 6. An order of the Interstate Commerce Commission is entitled to great respect, representing as it does the opinion of a body of experts upon matters within the range of their special knowledge and experience. Atlantic Coast Line R. Co. v. Florida, 295 U.S. 301, 317, 55 S.Ct. 713, 79 L.Ed. 1451; Universal Camera Corp. v. Labor Board, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456; Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 512, 513, 64 S.Ct. 1129, 88 L.Ed. 1420; Interstate Commerce Commission v. Illinois Central R. R., 215 U.S. 452, 470, 30 S.Ct. 155, 54 L.Ed. 280; Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 547, 548, 32 S.Ct. 108, 56 L.Ed. 308; Illinois Central R. R. v. Interstate Commerce Commission, 206 U.S. 441, 454, 27 S.Ct. 700, 51 L.Ed. 1128.

7. The plaintiff and the intervening plaintiffs object that the Commission committed numerous procedural errors. These objections have been considered by the court and have been found by it to be without merit. None of them is within the rule of prejudicial error, which is the criterion established by Section 10(e) of the Administrative Procedure Act, Title 5 U.S.C.A. § 1009(e). The more important of these alleged errors are set forth below, this court holding in each instance that the action of the Commission did not constitute prejudicial error:

(a) The City of Nashville urged that the Commission should require the applicant railroads to produce certain preliminary reports concerning the merger which were made by a freight traffic manager of the Louisville and Nashville Railroad Company. The Commission stated that, although these reports were not produced by the applicants, "extensive testimony with respect thereto was presented by interveners in opposition through former vice-president in charge of traffic for the Tennessee Company."

(b) The city complains that the Commission refused to require applicants to supply certain employment figures. The record herein shows that the city wanted to use these figures to establish that the Louisville and Nashville Railroad's Accounting Department is overstaffed. Although the requested figures were not produced, the head of the Accounting Department of that railroad was presented as a witness by the railroad and the witness was ready to testify as to whether or not his department is overstaffed.

(c) The city requested that the applicants provide information as to the number of tons delivered by the Louisville and Nashville to the Nashville, Chattanooga & St. Louis Railway at Nashville for each of the years 1951 through 1954. The applicants agreed to supply such figures for 1953 and 1954. The Interstate Commerce Commission did not require that the figures for 1951 and 1952 be produced.

(d) The employee group complains that the Commission erred procedurally in not finding that the adverse effect of the merger on the employees would be "permanent"; in not considering its exception that the merger would produce "poorer" service; and in not considering its contention that diesel locomotive repair costs are higher on the Louisville and Nashville than on the Nashville, Chattanooga & St. Louis. The Commission was not required to make a specific finding on the first point; and the record shows that it considered the contentions of the employee group on the other two points and rejected them.

■ 8. From this record, we find no showing that there has been any violation of applicable anti-trust laws of the United States. For controlling principles, see McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544; United States v. Southern Pacific Co., 259 U.S. 214, 42 S.Ct. 496, 66 L.Ed. 907.

■ 9. The plaintiff and the intervening plaintiffs complain of the failure

of the railroads, in the proceeding before the Commission, to join as an applicant the Mercantile-Safe Deposit & Trust Company, shown by the application to be the principal stockholder of The Atlantic Coast Line Company. Neither the plaintiff nor any intervening plaintiff has shown wherein such failure adversely affects any of its legal interests. The court holds that the failure to join the Mercantile-Safe Deposit & Trust Company was not a jurisdictional defect and does not affect the validity of the Commission's order herein; and that such failure, not being a jurisdictional defect and not having been raised in the proceeding before the Commission, cannot be raised now for the first time before this court.

In Alleghany Corp. v. Breswick & Co., 353 U.S. 151, 77 S.Ct. 763, 775, 1 L.Ed.2d 726, it was held that "the failure to join two stockholders alleged to control Alleghany does not oust the Commission of jurisdiction."

In United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54, the Supreme Court said: "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."

10. Neither the plaintiff nor any of the intervening plaintiffs has shown any ground upon which the court could justify an order annulling, vacating, or setting aside the order of the Commission.

11. The statute—49 U.S.C.A. § 5(2) (f)—provides: "As a condition of its approval, under this paragraph (2), of any transaction involving a carrier or carriers by railroad subject to the provisions of this chapter, the Commission shall require a fair and equitable arrangement to protect the interests of the railroad employees affected."

The approval by this court of the order of the Interstate Commerce Commission of March 1, 1957, approving the merger upon the conditions therein stated, is based upon the express condition that the rights of the employees of the Nashville, Chattanooga & St. Louis Railway Company shall be protected equally with those of employees of the Louisville and Nashville Railroad Company as relates to seniority and to other conditions of employment in accordance with the express understanding as stated at the hearing by the attorney for the Interstate Commerce Commission and by attorneys for the two railroad carriers involved herein, disclosed in finding of fact Number 15.

12. An appropriate judgment in compliance with the conclusions herein expressed will be drawn and entered.